The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly self-insured and Novant Health is a Third Party Administrator.
4. Plaintiffs average weekly wage was $940.33 yielding the maximum compensation rate for 1998 of $532.00.
5. Plaintiffs medical records were stipulated into evidence as Stipulated Exhibit 1. These medical records consist of documentation from Maplewood Family Practice, PrimeCare, PA Hall, William O. Bell, M.D., Stephen L. Bower, M.D., Lisa Testa, M.D., Kathleen M. Barfoot, M.D., Stokes County EMS, Forsyth Medical Center, Dr. Barfoot, Keith B. VanZandt, M.D., Landon E. Weeks, M.D., High Point Pain Management, Gregory Mieden, M.D., Ira Bell, III, M.D., William Woodruff, III, M.D., and Anthony Russell, M.D.
6. Plaintiffs physical therapy records were stipulated into evidence as Stipulated Exhibit 2.
7. Industrial Commission forms and filings were stipulated into evidence as Stipulated Exhibit 3.
8. The issues are: (i) whether plaintiff sustained a compensable injury to her back on March 4, 1998; and (ii) if so, what compensation, if any is due plaintiff?
9. The deposition of William O. Bell, M.D. is a part of the evidentiary record in this matter.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-two (42) years old and had one (1) adult child. Plaintiff had graduated from high school and in 1991 became a Registered Nurse.
2. Plaintiff has a continuous work history since 1973. Plaintiff worked in various unskilled jobs until November 5, 1990 when she was employed as a student nurse by defendant-employer.
3. From August 1992 through March 4, 1998, plaintiff worked for defendant-employer as a registered nurse providing direct patient care on the defendants orthopedic floor. Plaintiffs duties included mostly standing, walking, bending and some lifting of patients.
4. In or about 1992, plaintiff encountered some lower back pain which resolved after about ten (10) days.
5. On February 18, 1998, plaintiff was seen at her family physician complaining of a one (1) month history of low back pain radiating into her buttocks and her thighs. Plaintiff was given mild pain relievers and exercises in order to relieve her pain. Plaintiff was returned to her family physician within two (2) weeks to determine her improvement. Plaintiff did improve during this time period and did not return for further treatment.
6. On March 4, 1998, plaintiff was requested by an orthopedic technician to help him place a patients leg in a continuous passive motion machine. Plaintiff lifted the machine and sustained a specific traumatic incident when she felt a sharp burning pain in her lower back radiating into her right buttocks. Plaintiff was unable to stand upright for several seconds because of the severity of her pain.
7. Plaintiff immediately reported this injury to her supervisor.
8. The following morning, plaintiffs back and leg pain were so severe that she was unable to get out of bed. Plaintiff had never experienced this level of pain prior to the events of March 4, 1998.
9. On March 5, 1998, plaintiff sought treatment for her low back and right leg pain at PrimeCare. Plaintiff received a prescription for pain medication and was instructed to rest in bed and not work until after a return visit on March 9, 1998.
10. On March 9, 1998, plaintiff continued to have pain radiating down her right leg to her foot. Plaintiff was diagnosed with low back pain with sciatic irritation. Plaintiff was authorized to perform sedentary work duties.
11. Plaintiff returned to PrimeCare on March 17, 1998 and was improving and allowed to return to light duty work.
12. On March 24, 1998, PrimeCare released plaintiff to return to work without restrictions.
13. After March 4, 1998, plaintiff was unable to return to her pre-injury duties because of back and leg pain.
14. Following her March 4, 1998 back injury, her co-workers did the primary physical work duties for plaintiff and plaintiff was allowed to change her positions frequently.
15. Plaintiff resigned from defendant-employer on June 6, 1998.
16. On June 12, 1998, plaintiff went to work at High Point Regional Hospital. Plaintiff had a 10-week orientation period which allowed her to change positions frequently to control her lower back and leg pain. During this time period, plaintiffs pain did increase and plaintiffs assignment as a shift coordinator on the restorative care unit at the High Point Regional Hospital assisted her in being able to change positions frequently and control her back and leg pain.
17. Because plaintiff encountered persistent symptoms of back and leg pain, PrimeCare referred her to neurosurgeon William O. Bell for further evaluation for her back and leg pain.
18. On October 6, 1998 plaintiff underwent a lumbar MRI. This MRI was read at that time as not revealing a ruptured disc at the L5-S1. Dr. Bell re-examined the MRI in July 1999 and discovered the MRI did actually show a ruptured disc at L5-S1 on the right.
19. During October 6, 1998 through June 1999, plaintiff continued to experience intermittent periods of low back and leg radiculopathy resulting from her back injury.
20. On March 13, 1999, the EMG/NCV Report indicated plaintiff suffered from a moderate S1 radiculopathy of her right leg.
21. On May 19, 1999, a lumbar MRI indicated plaintiff had an L5-S1 disc herniation on the right.
22. On June 16, 1999, plaintiff underwent a lumbar laminectomy and excision of ruptured disc by Dr. Bell due to the herniated nucleus pulposus at L5-S1 level of her spine on the right, these problems resulted from plaintiffs March 4, 1998 back injury.
23. As a result of her injury of March 4, 1998, plaintiff was unable to earn the same or greater wages in any employment during the following periods: March 5-8, 1998; November 4-29, 1998; April 26-30, 1999; and May 22-August 8, 1999.
24. On August 9, 1999, plaintiff returned to light duty work at High Point Regional Hospital.
25. Plaintiff reached maximum medical improvement on September 9, 1999, from her compensable injury of March 4, 1998 and has a ten (10%) percent permanent partial disability rating to her back as a result.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On March 4, 1998, plaintiff sustained an injury by accident to her lower back arising out of and in the course of her employment by defendant-employer as a direct result of a specific traumatic incident of the work assigned with defendant-employer. As a result, plaintiff suffered a ruptured disc at the L5-S1 level of her spine on the right side. N.C.G.S. 97-2(6).
2. As a result of her compensable injury, plaintiff is entitled to temporary total disability compensation at the maximum compensation rate for 1998 of $532.00 for the periods of: March 5-8, 1998, November 4-29, 1998, April 26-30, 1999, and May 22-August 8, 1999. N.C.G.S. 97-2(9); N.C.G.S. 97-29.
3. Subject to the limitations of N.C. Gen. Stat. 97-25.1, defendant shall pay all reasonably necessary medical expenses relating to plaintiffs March 4 back injury so long as said treatment should effectuate a cure, give relief or lessen plaintiffs period of disability. N.C.G.S. 97-25 and 97-25.1.
4. As a result of her compensable injury, plaintiff is entitled to 30 weeks of permanent partial disability at the compensation rate of $532.00 for her (10%) percent permanent partial disability rating to her back. N.C.G.S. 97-31.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation benefits at the rate of $532.00 per week for the following periods: March 5-8, 1998; November 4-29, 1998; April 26-30, 1999; and May 22-August 8, 1999. Said amount shall be paid in a lump sum subject to an attorneys fee approved in Paragraph 4.
2. Defendant shall pay plaintiff for her ten (10%) percent permanent partial disability to her back at a rate of $532.00 per week for 30 weeks. Said amount shall be paid in a lump sum subject to an attorneys fee approved in Paragraph 4.
3. Subject to the limitations of N.C. Gen. Stat. 97-25.1, defendant shall pay all reasonably necessary medical expenses which tend to effect a cure, provide relief or lessen the period of disability resulting from plaintiffs March 4, 1998 injury to her back.
4. A reasonable attorneys fee in the amount of twenty-five (25%) percent of the compensation awarded in Paragraphs 1 and 2 of this AWARD shall be paid as follows: twenty-five (25%) percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel.
5. Defendant shall pay the costs.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/bjp